# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

A.L.M. HOLDING COMPANY and
ERGON ASPHALT & EMULSIONS,
INC.,

      Plaintiffs,

          v.

ZYDEX INDUSTRIES PRIVATE
LIMITED and ZYDEX INC.,

      Defendants.

Civil Action No. 1:25-cv-00155-JFM

**REDACTED - PUBLIC VERSION**

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO CHALLENGE PRIVILEGE CLAIM AND TO COMPEL DISCOVERY

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... ii

I.     INTRODUCTION ......................................................................................1

II.    ARGUMENT ...............................................................................................1

      A.    The Court Should Find That Pages HTAS000001994–1998
           ("Disputed Zydex Emails") Are Not Protected By Privilege ...............1

           1.    Work product privilege does not apply—these emails
                  were not created for litigation but are business
                  correspondence ............................................................................4

           2.    Attorney-client privilege does not apply—the emails
                  include no attorneys and no legal advice ....................................6

           3.    If privileged, the exception under Rule 26(b)(3)(A) applies ......7

           4.    At a minimum, Zydex/HTAS should provide the emails
                    with limited redactions ................................................................9

      B.    The Court Should Order Zydex To Search For And Produce
           Its 2017 Testing/Analysis ......................................................................9

      C.    The Court Should Order Zydex To Produce Information On
           The Manufacturing Of Its Products .....................................................11

      D.    The Court Should Order Zydex To Provide Narrative
           Responses To Interrogatories 4 And 5 ................................................12

III.   CONCLUSION .........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*F.T.C. v. Boehringer Ingelheim Pharms., Inc.*,
778 F.3d 142 (D.C. Cir. 2015) .............................................................................. 9

*Hercules, Inc. v. Exxon Corp.*,
434 F. Supp. 136 (D. Del. 1977) ............................................................................ 6

*In re Teleglobe Commc'ns Corp.*,
493 F.3d 345 (3d Cir. 2007) .................................................................................. 6

*T.N. Taube Corp. v. Marine Midland Mortg. Corp.*,
136 F.R.D. 449 (W.D.N.C. 1991) ....................................................................... 13

*United States v. Nobles*,
422 U.S. 225 (1975) ................................................................................................ 4

*United States v. Textron Inc. & Subsidiaries*,
577 F.3d 21 (1st Cir. 2009) .................................................................................... 4

**Rules**

Fed. R. Civ. P. 26 ........................................................................................... passim

Fed. R. Civ. P. 33 ........................................................................................... 12, 13

**Other Authorities**

4A Moore's Federal Practice ¶ 33.25 ................................................................... 13

Restatement (Third) of the Law Governing Lawyers § 68 (2000) ......................... 6

## I.    INTRODUCTION

Plaintiffs A.L.M. Holding Company and Ergon Asphalt & Emulsions, Inc. (collectively, "ALM" or "Plaintiffs") respectfully move for an order finding documents produced in this case are not privileged and compelling discovery from Defendants Zydex Industries Private Limited and Zydex Inc. (collectively, "Zydex" or "Defendants").

In particular, Plaintiffs move for an Order: 1) finding pages HTAS000001994–1998 ("Disputed Zydex Emails") are not protected by privilege[1]; 2) compelling Zydex to search for and produce all testing and analysis of Accused Products and related communications, including what was done in 2017; 3) compelling Zydex to produce information on the manufacturing of its products; and 4) compelling Zydex to provide narrative responses to Interrogatories 4 and 5.

For the reasons stated below, Plaintiffs respectfully request this Motion be granted.

## II.    ARGUMENT

### A.    The Court Should Find That Pages HTAS000001994–1998 ("Disputed Zydex Emails") Are Not Protected By Privilege

On October 20, 2025, Plaintiffs sent Zydex an email identifying gaps in Zydex's document production. Ex. A.[2] This came to light with the production of the document

---

[1] HTAS has been served with a copy of this motion so it can participate in adjudication of this issue.

[2] Exhibits are attached to the Declaration of Stephen Ball, counsel for Plaintiffs.

bearing Bates numbers HTAS000001991–1998[3] by subpoena recipient Hi-Tech Asphalt Solutions, Inc. ("HTAS"). Ex. A. The document consists of email communication between HTAS and Zydex. Ex. B. HTAS is a distributor of Zydex and both are represented by the same law firm (Gish PLLC).

Plaintiffs pointed out a September 15, 2017 email produced by Zydex that stated,



Ex. A; Ex. C (emphasis in original). This was in reference to patents at issue in this case. Thereafter, as evidenced by the Disputed Zydex Emails, Zydex's Ajay Ranka emailed HTAS stating that ."[4] Ex. B[5] at 4. In a separate email, Zydex told HTAS and that " Ex. B at 4.

---

[3] Notably, HTAS is not asserting privilege over the first three pages of this document.
[4] According to their LinkedIn biographies, Moulik Ranka and Mikhil Ranka are the Directors of Zydex Inc. and Zydex Industries Private Limited, respectively. Ajay Ranka is Chairman and Managing Director of Zydex Group and Zydex Industries.
[5] Plaintiffs have retained a single copy of the purportedly privilege document in order to challenge the privilege claim pursuant to the Protective Order. Plaintiffs respectfully request permission to submit Ex. B for *in camera* review and request that the Court provide instructions on how best to do so.

While Zydex produced the September 15, 2017 email, it did not produce or log either of the subsequent emails that are part of the Disputed Zydex Emails. Nor did it produce or log the testing and analysis referenced therein. These omissions call into question Zydex's search for documents and is particularly concerning given HTAS's initial resistance to discovery on the basis it would be duplicative to Zydex's production.

On October 21, counsel for Zydex/HTAS sought to claw back the Disputed Zydex Emails (only the last 4 pages of the document). Ex. D at 2. HTAS provided a privilege log for the Disputed Zydex Emails that describes them as follows:

> Communications prepared in anticipation of litigation in response to ALM/Ergon's Sept. 2017 letter alleging patent infringement by Zydex and HTAS. Expressing mental impressions, conclusions, opinions, and/or legal theories of party representatives (including Ajay Ranka, Moulik Ranka, Mikhil Ranka, and Carlos Usuda) regarding (at least) non-infringement, the scope of the asserted claims, the content of the prior art, and the applicability of business tort law. Reflecting the substantive content of communications with attorneys retained to defend Zydex and HTAS in the anticipated litigation.

Ex. E. Counsel for Zydex/HTAS also stated unequivocally "There are no gaps in Zydex's production." Ex. D at 1. Then, on October 22, counsel for Zydex/HTAS further stated that the Disputed Zydex Emails are "not evidence of any 'gaps in Zydex's document production.'" Ex. A at 1.

The Protective Order in this case provides that the Disputed Zydex Emails may be used "to challenge the privilege claim with the Court." Doc. 49 at 8. For the reasons

stated below, the Disputed Emails are not privileged. However, in the event the Court finds otherwise, they should be subject to the exception under Fed. R. Civ. P. 26(b)(3)(A).

### 1. Work product privilege does not apply—these emails were not created for litigation but are business correspondence

The work product privilege is not an umbrella to protect every document created by a party, but is directed to "Trial Preparation: Materials." Fed. R. Civ. P. 26(b)(3). *See also United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29 (1st Cir. 2009) ("From the outset, the focus of work product protection has been on materials prepared for use in litigation, whether the litigation was underway or merely anticipated."). The rationale behind its expansion to non-attorneys is simply that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

HTAS's privilege log states the Disputed Zydex Emails are "[c]ommunications prepared in anticipation of litigation in response to ALM/Ergon's Sept. 2017 letter alleging patent infringement by Zydex and HTAS." Ex. E. That these emails may relate to potential litigation is of no moment, because ***these emails were not created for use in litigation*** and so do not fall under litigation work product. Put another way, ***the Disputed Zydex Emails contain no legal strategies or theories***. They are not "trial preparation materials" excepted from discovery under Rule 26. Instead, they are mere

4

business communications in which Zydex is attempting to "stand behind" its business associate, concluding "Performance, Price and service will prevail." Ex. B at 4, 5. Such communications are not shielded by any privilege.

That the Disputed Zydex Emails were not created for use in litigation is further evidenced by fact that Zydex has produced other similar emails with Zydex's conclusion of non-infringement. That is, contrary to Zydex/HTAS's claim that the Disputed Zydex Emails express "mental impressions, conclusions, opinions, and/or legal theories of party representatives (including Ajay Ranka, Moulik Ranka, Mikhil Ranka, and Carlos Usuda) regarding (at least) non-infringement, the scope of the asserted claims, the content of the prior art, and the applicability of business tort law," as asserted in the privilege log, *Zydex has already acknowledged those mental impressions are not privileged*. For example, Zydex produced the September 15 email where Zydex ████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████ Ex. C (emphasis in original). That email was sent by Moulik Ranka and demonstrates Zydex had already concluded noninfringement prior to its communications with HTAS, and that its "mental impressions, conclusions, opinions, and/or legal theories of party representatives" are not privileged[6].

---

[6] Another email on this document is redacted for privilege, evidencing that Zydex specifically reviewed and determined that the September 15 email is not privileged. Ex. C.

Zydex's own disclosure of related emails shows that the Disputed Zydex Emails were not created in anticipation of litigation and are thus not work product. Finding otherwise would potentially subject all party communications to this privilege, regardless of whether they contain any legal analysis.

### 2. Attorney-client privilege does not apply—the emails include no attorneys and no legal advice

To qualify for the attorney-client privilege, a communication must be "for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct. 12, 2007) (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)); *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977) ("…for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding…"). Here, there are no attorneys involved in the Disputed Zydex Emails and Zydex/HTAS do not even allege there are.

Nor is there any reference to legal advice in the Disputed Zydex Emails. The only reference to an attorney is Zydex's attempts to placate its distributor by stating that it " ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Ex. B at 5. But the referenced "response" is publicly available and part of the pleadings in this case, having been attached as an exhibit to the Complaint. Doc. 1-18. So to the extent anything in the Disputed Zydex Emails is

6

"Reflecting the substantive content of communications with attorneys retained to defend Zydex and HTAS in the anticipated litigation," as set forth in the privilege log, this has already been waived.

But most importantly, ***there is no legal advice of any kind in the Disputed Zydex Emails***. As discussed above, it is simply business correspondence by a manufacturer (Zydex) trying to placate its distributor.

### 3.    If privileged, the exception under Rule 26(b)(3)(A) applies

Under the Rules, privileged information can still be discovered when:

(i) they are otherwise discoverable under Rule 26(b)(1) ; and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). Rule 26 allows broad discovery into matters relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1).

In addition, there is a substantial need by Plaintiffs for the Disputed Zydex Emails. Those emails are directly relevant to a number issues in the case, such as:

<u>Claim Construction</u> – Zydex argues in this case that the patent claim terms are indefinite and cannot be interpreted. This is shown to be a litigation tactic as Zydex readily interpreted the claims in 2017 and concluded noninfringement. For example, Zydex states "███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████" Ex. B at 4.

Similarly, the Disputed Zydex Emails also relate to the ultimate issue of validity.

Willful Infringement – At issue is whether Zydex had a reasonable apprehension it did not infringe. This requires discovery into any analysis Zydex performed. For example, Zydex states "████████████████████████████████

████████████████████████████████████████████████

███████." Ex. B at 4[7]. Similarly, the Disputed Zydex Emails also relate to the ultimate issue of infringement.

Zydex's Document Production – Plaintiffs called attention to the Disputed Zydex Emails because they revealed gaps in Zydex's document production. Ex. A. Not only do these Disputed Zydex Emails include emails that Zydex failed to produce or log, but they also refer to testing and analysis that Zydex performed in 2017 and failed to produce or log. For example, Zydex stated "█████████████████████

████████████████████████████████████████ Ex. B at 4. Zydex also stated

████████████████████████████████████████████████

████████ Ex. B at 4. Zydex also stated ██████████████████████

████████████████████████████████████████████████

---

[7] ████████████████████████████████████████████████

███████████████████████████████████████████████████

████ Ex. B at 5.

████████    Ex. B at 4. Perhaps most importantly, Zydex stated ████████

████████████████████████████████████████████████████████

████████████████████████    Ex. B at 5. As discussed

below, this directly contradicts Zydex's positions during discovery, where it has

refused to produce information on the manufacture of its products on the basis of

relevance.

Accordingly, Plaintiffs have a substantial need to use the Disputed Zydex

Emails in its case. This evidence is exclusively in Zydex's possession and there is

simply no other way to get it. *See F.T.C. v. Boehringer Ingelheim Pharms., Inc.*, 778

F.3d 142, 155 (D.C. Cir. 2015) (ordinary relevance is sufficient for Fed. R. Civ. P.

26(b)(3)(A) exception).

### 4.    At a minimum, Zydex/HTAS should provide the emails with limited redactions

Given the need for these emails, and the fact that they do not include attorneys

or legal advice, Plaintiffs request that they at least be provided with redacted copies.

### B.    The Court Should Order Zydex To Search For And Produce Its 2017 Testing/Analysis

As discussed above, the Disputed Zydex Emails reveal gaps in Zydex's

document production. *See* Ex. A. Not only were emails between Zydex and HTAS not

produced or logged by Zydex, but neither was the testing and analysis referred to in

those emails. Plaintiffs specifically requested this information from Zydex. Ex. A.

9

This is not privileged, as evidenced by the September 15, 2007 email where Zydex

concluded ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Ex. C.

Such testing and analysis is responsive at least to Interrogatory No. 4, discussed below, as well as Document Request No. 24, Ex. H at 1, 4; I at 24. Document Request No. 24 seeks, in part, "Documents . . . relating to the design, development, functionality, or testing . . . of any Accused Product or any composition containing any Accused Product." Ex. I at 24. While Zydex initially refused to produce such documents before February 7, 2019, it later agreed to produce any testing and related communications without date limitation. Ex. H at 1.

Accordingly, Zydex should search for and produce all testing and analysis of the Accused Products and related communications, including what was done in 2017. To the extent Zydex claims not to have any further documents, it can represent that to the Court.[8] However, there is no risk in ordering Zydex to perform a search and comply with the discovery requests, as the Disputed Zydex Emails identify gaps in its production.

---

[8] If Zydex once did have these documents but it no longer has them, Plaintiffs request discovery into possible spoliation of evidence.

10

### C.    The Court Should Order Zydex To Produce Information On The Manufacturing Of Its Products

Plaintiffs' Interrogatory No. 4 seeks:

> For each Accused Product, describe all research, development, testing, and manufacturing performed from January 1, 2013 to the present, including by identifying any dates, locations, persons involved along with their roles, the results of any testing, and any Documents (by Bates number) You contend provide evidence of any of the foregoing.

Ex. F at 20. In response, Zydex stated:

> None of the Asserted Claims are directed to the process of manufacturing an asphalt additive, and the process by which the Accused Products have been manufactured is not relevant to any claims or defenses in this litigation. <u>Defendants will not provide a description of the process of manufacturing the Accused Products.</u>

Ex. F at 20 (emphasis added). Surprised by this response, Plaintiffs requested a meet and confer that occurred on October 14, 2025. Plaintiffs inquired how the manufacture of the Accused Products is irrelevant when claim terms are directed to things like "water-free," "non-foamed," "lubricating," and "surfactant." Ex. G at 2. But Zydex confirmed it was withholding information about the manufacture of its products, stating:

> That is not information that is relevant or proportional to the needs of the case, particularly given that there are no claims that relate to the method of making an asphalt additive (as opposed to claims that relate to the composition of that asphalt additive, or the method of making an asphalt paving composition containing an additive).

Ex. G at 2.

It is undeniable that the manufacturing of a product is relevant in a patent infringement case about that product. Under Rule 26, parties can generally discover

"any nonprivileged matter that is relevant to any party's claim". Fed. R. Civ. P. 26(b)(1). As Zydex has acknowledged above, asserted patent claims are directed to compositions, which include the Accused Product as an additive. Specific claim terms include things like water, foam, lubricant, and surfactant. How the Accused Products are manufactured sheds light on whether the Accused Products satisfy those limitations, such as by adding or forming those components during the manufacturing process.

Perhaps most importantly, Zydex's own statements in the Disputed Zydex Emails acknowledge that Zydex is ████████████████████ ████████████████████████████████████ ████████████████████████ Ex. B at 5. Zydex knows how its products are manufactured/formulated, which it says is the better information for determining infringement. Despite this, and despite the breadth of permissive discovery under Rule 26, Zydex is refusing to produce this information in response to Interrogatory No. 4.

Accordingly, Plaintiffs respectfully request that Zydex be ordered to update its response to Interrogatory No. 4 to include information on its manufacturing of the Accused Products.

### D. The Court Should Order Zydex To Provide Narrative Responses To Interrogatories 4 And 5

In response to Interrogatory No. 4, discussed above, Zydex improperly invoked Rule 33(d). That rule provides the option to produce business records "if the burden

of deriving or ascertaining the answer will be substantially the same for either party"
and only by "specifying the records that must be reviewed, in sufficient detail to
enable the interrogating party to locate and identify them as readily as the responding
party could." Fed. R. Civ. P. 33(d). Neither element is satisfied here, where Zydex
responded by identifying approximately 800 documents spanning eight (8) pages.
Ex. F at 21-28.

Any burden of deriving the answer will be substantially less for Zydex. Zydex
is most familiar with its own records, and so it is in a better position to provide the
information sought. *T.N. Taube Corp. v. Marine Midland Mortg. Corp.*, 136 F.R.D.
449, 454 (W.D.N.C. 1991) ("An important—often key—factor in weighing the
respective burdens on the parties is the interrogated party's familiarity with its own
documents.") (citing 4A Moores Federal Practice par. 33.25). In fact, the Advisory
Committee Notes explicitly caution against simply directing a requesting party to a
large swath of documents:

> The Committee is advised that parties upon whom interrogatories are
> served have occasionally responded by directing the interrogating party
> to a mass of business records or by offering to make all of their records
> available, justifying the response by the option provided by this
> subdivision. Such practices are an abuse of the option.

Fed. R. Civ. P. 33, Adv. Comm. Notes (1980). Here, there are approximately 800
documents cited in response to the Interrogatory. And as a practical matter, only
Zydex can provide the context for these documents and how they are responsive. For

13

example, included in the documents are things like public standards specifications.[9]

Also included are things like invoices for generic activities like "Miscellaneous Lab Testing." ZYD000052890.[10] While some of these documents may be responsive to the Interrogatory, they are meaningless without context and an explanation of how they are relevant. Plaintiffs are entitled to the narrative response they requested on Zydex's own "research, development, testing, and manufacturing."

For the same reasons discussed above, Zydex should provide a narrative response to Interrogatory No. 5. That Interrogatory seeks:

> Identify any attempts You are aware of to have an Accused Product approved by a governmental agency for any use, including by identifying any dates, governmental authorities, requested uses, persons involve along with their roles, the results of the attempts, and any Documents (by Bates number) You contend provide evidence of any of the foregoing.

Ex. F at 28. In response, this time Zydex cited approximately 1500 documents spanning twelve (12) pages. Ex. F. at 28-39. Again, only Zydex can provide the context for these documents and how they are responsive. For example, included in the documents are things like product literature on its NanoTac product, which is not

---

[9] As an example, ZYD000030222 is a document titled "Standard Specifications State of California." Despite being publicly available at https://dot.ca.gov/-/media/dot-media/programs/design/documents/2022_stdspecs-a11y.pdf, Zydex has marked this document Confidential. ZYD000050333 is a document titled "Standard Specifications For Highway And Bridge Construction New Mexico Department Of Transportation." ZYD000040110 is a document titled "European standard NF EN 15626."

[10] Plaintiffs have not attached these documents as exhibits in order to reduce the administrative burden, but can make them available to the Court upon requests.

one of the Accused Products. ZYD000038214. Plaintiffs are entitled to the narrative response they requested on attempts "to have an Accused Product approved by a governmental agency."

Accordingly, Zydex should provide narrative responses to Interrogatory Nos. 4 and 5. Zydex knows what activities were performed for "research, development, testing, and manufacturing" and "to have an Accused Product approved by a governmental agency" and is in the best position to provide the requested information.

## III.    CONCLUSION

For the reasons stated, Plaintiffs respectfully move for an Order: 1) finding pages HTAS000001994–1998 ("Disputed Zydex Emails") are not protected by privilege; 2) compelling Zydex to search for and produce all testing and analysis of Accused Products and related communications, including what was done in 2017; 3) compelling Zydex to produce information on the manufacturing of its products; and 4) compelling Zydex to provide narrative responses to Interrogatories 4 and 5.

Dated: October 30, 2025                    Respectfully submitted,

By: */s/ John C. Phillips, Jr.*
   John C. Phillips, Jr. (#110)
   Megan C. Haney (#5016)
   **Phillips, McLaughlin & Hall, P.A.**
   1200 North Broom Street
   Wilmington DE, 19806
   302-655-4200 Telephone
   302-655-4210 Facsimile
   jcp@pmhdelaw.com
   mch@pmhdelaw.com

   Jeffer Ali
   **HUSCH BLACKWELL LLP**
   80 S. Eighth Street, Suite 4800
   Minneapolis, MN 55402
   612-852-3610 Telephone
   612-852-2701 Facsimile
   jeffer.ali@huschblackwell.com

   Stephen R. Howe
   **HUSCH BLACKWELL LLP**
   511 N. Broadway, Suite 1100
   Milwaukee, WI 53202
   414-273-2100 Telephone
   414-223-5000 Facsimile
   steve.howe@huschblackwell.com

   Brendan G. McDermott
   **HUSCH BLACKWELL LLP**
   8001 Forsyth Blvd, Suite 1500
   St. Louis, MO 63105
   314-480-1500 Telephone
   314-480-1505 Facsimile
   brendan.mcdermott@huschblackwell.com

   Stephen F.W. Ball, Jr.
   **HUSCH BLACKWELL LLP**
   One Congress Street, Suite 3102

16

Boston, MA 02114
617-598-6700 Telephone
617-598-6790 Facsimile
stephen.ball@huschblackwell.com

***Attorneys for Plaintiffs A.L.M. Holding Company and Ergon Asphalt & Emulsions, Inc.***

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of October 2025, I caused the foregoing

to be served via electronic mail upon the following:

Andrew Gish
Edward L. Tulin
Conor McDonough
Ray Bilderbeck
Christopher DeCoro, Ph.D.
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
212-518-7380
andrew@gishpllc.com
edward@gishpllc.com
conor.mcdonough@gishpllc.com
ray@gishpllc.com
chris.decoro@gishpllc.com

Thomas J. Pardini
GISH PLLC
50 California Street, Suite 1500
San Francisco, CA 94111
415-630-7300
tom.pardini@gishpllc.com

David E. Moore (#3983)
Bindu A. Palapura (#5730)
Andrew M. Moshos (#6685)
Chamyra L. Upshur (#7344)
POTTER ANDERSON & CORROON
LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
302-984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

Edward L. Tulin, Esq.
edward@gishpllc.com
Andrew D. Gish, Esq.
andrew@gishpllc.com
Ray Bilderbeck, Esq.
ray@gishpllc.com
Christopher DeCoro, Esq.
chris.decoro@gishpllc.com
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
T: (212) 518-2000

***Attorneys for Subpoena Recipient
HTAS***

18

amoshos@potteranderson.com
cupshur@potteranderson.com

**Attorneys for the Zydex Defendants.**

/s/ Megan C. Haney
Megan C. Haney (#5016)